IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
FORT SMITH DIVISION

LINDA K. STINNETT                                                                                           PLAINTIFF

        v.                              Civil No. 14-2075

CAROLYN COLVIN, Commissioner
Social Security Administration                                                                      DEFENDANT

## MEMORANDUM OPINION

Plaintiff, Linda Stinnett, brings this action under 42 U.S.C. § 405(g), seeking judicial review of a decision of the Commissioner of Social Security Administration (Commissioner) denying her claims for a period of disability and disability insurance benefits ("DIB") under Title II of the Social Security Act (hereinafter "the Act"), 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). In this judicial review, the court must determine whether there is substantial evidence in the administrative record to support the Commissioner's decision. *See* 42 U.S.C. § 405(g).

### I.  Procedural Background:

Plaintiff filed her application for DIB on December 3, 2010, alleging an onset date of October 7, 2010,[1] due to diabetes, neuropathy, chronic obstructive pulmonary disease ("COPD"), a heart condition, a total hysterectomy, a tumor on her ovary, arthritis in her left hip, and a baker cyst on her right knee. Tr. 167, 174-175, 192-193. The Commissioner denied Plaintiff's application initially and on reconsideration. Tr. 92-93. An Administrative Law Judge ("ALJ") held an administrative hearing on June 29, 2012. Tr. 53-75. Plaintiff was present and represented by counsel.

---

[1] The Plaintiff filed a prior application for benefits in June 2009. Tr. 79. An Administrative law Judge denied her application in October 2010, and this court affirmed that decision on July 8, 2013. *See Stinnett v. Astrue*, 12-2124 (W.D. Ark. 2013).

The Plaintiff possessed a tenth grade education. Tr. 168. Although she did attempt to obtain her GED, she did not pass the test. Tr. 201. Plaintiff had past relevant work ("PRW") experience as a parts auditor/inspector. Tr. 44, 159-160, 168.

On September 21, 2012, the ALJ found Plaintiff's diabetes mellitus, hypertension, history of congestive heart failure, hearth rhythm disorder, obesity, minimal degenerative changes in her lumbar spine, and mild spurring in her right greater trochanter were severe, but did not meet or medically equal one of the listed impairments in Appendix 1, Subpart P, Regulation No. 4. Tr. 37-39. After partially discrediting Plaintiff's subjective complaints, the ALJ determined that Plaintiff retained the residual functional capacity ("RFC") to perform a full range of light work. Tr. 39. The ALJ then found Plaintiff could return to her PRW as a parts auditor/inspector on the line.

The Appeals Council denied Plaintiff's request for review on February 5, 2014. Tr. 1-7. This case is before the undersigned by consent of the parties. ECF No. 7. Both parties have filed appeal briefs, and the case is now ready for decision. ECF Nos. 12, 13.

## II. **Applicable Law:**

This court's role is to determine whether substantial evidence supports the Commissioner's findings. *Ramirez v. Barnhart*, 292 F.3d 576, 583 (8th Cir. 2002). Substantial evidence is less than a preponderance but is enough that a reasonable mind would find it adequate to support the Commissioner's decision. We must affirm the ALJ's decision if the record contains substantial evidence to support it. *Edwards v. Barnhart*, 314 F.3d 964, 966 (8th Cir. 2003). As long as there is substantial evidence in the record that supports the Commissioner's decision, the court may not reverse it simply because substantial evidence exists in the record that would have supported a contrary outcome, or because the court would have decided the case differently. *Haley v. Massanari*, 258 F.3d 742, 747 (8th Cir. 2001). In other words, if after reviewing the record it is

possible to draw two inconsistent positions from the evidence and one of those positions represents the findings of the ALJ, we must affirm the decision of the ALJ. *Young v. Apfel*, 221 F.3d 1065, 1068 (8th Cir. 2000).

A claimant for Social Security disability benefits has the burden of proving her disability by establishing a physical or mental disability that has lasted at least one year and that prevents her from engaging in any substantial gainful activity. *Pearsall v. Massanari*, 274 F.3d 1211, 1217 (8th Cir. 2001); *see also* 42 U.S.C. § § 423(d)(1)(A), 1382c(a)(3)(A). The Act defines "physical or mental impairment" as "an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. § § 423(d)(3), 1382(3)(c). A Plaintiff must show that his or her disability, not simply their impairment, has lasted for at least twelve consecutive months.

The Commissioner's regulations require her to apply a five-step sequential evaluation process to each claim for disability benefits: (1) whether the claimant has engaged in substantial gainful activity since filing her claim; (2) whether the claimant has a severe physical and/or mental impairment or combination of impairments; (3) whether the impairment(s) meet or equal an impairment in the listings; (4) whether the impairment(s) prevent the claimant from doing past relevant work; and, (5) whether the claimant is able to perform other work in the national economy given her age, education, and experience. *See* 20 C.F.R. § § 404.1520(a)-(f)(2003). Only if the final stage is reached does the fact finder consider the Plaintiff's age, education, and work experience in light of his or her residual functional capacity. *See McCoy v. Schweiker*, 683 F.2d 1138, 1141-42 (8th Cir. 1982); 20 C .F.R. § § 404.1520, 416.920 (2003).

**III.     Discussion:**

Plaintiff raises three issues on appeal:  1) The ALJ erred in his RFC determination; 2) The ALJ failed to develop the record; and, 3) The ALJ erred at step four by failing to consult a vocational expert concerning the Plaintiff's ability to return to her PRW.  For the reasons set forth below, the Court disagrees.

The Court has reviewed the entire transcript.  The complete set of facts and arguments are presented in the parties' briefs and the ALJ's opinion, and are repeated here only to the extent necessary.

**A. RFC Determination:**

In her first point of error, Plaintiff contests the ALJ's RFC determination.  RFC is the most a person can do despite that person's limitations.  20 C.F.R. § 404.1545(a)(1).  A disability claimant has the burden of establishing his or her RFC.  *See Masterson v. Barnhart*, 363 F.3d 731, 737 (8th Cir. 2004).  "The ALJ determines a claimant's RFC based on all relevant evidence in the record, including medical records, observations of treating physicians and others, and the claimant's own descriptions of his or her limitations."  *Davidson v. Astrue*, 578 F.3d 838, 844 (8th Cir. 2009)*; see also Jones v. Astrue*, 619 F.3d 963, 971 (8th Cir. 2010) (ALJ is responsible for determining RFC based on all relevant evidence, including medical records, observations of treating physicians and others, and claimant's own description of his limitations).  Limitations resulting from symptoms such as pain are also factored into the assessment.  20 C.F.R. § 404.1545(a)(3).  The United States Court of Appeals for the Eighth Circuit has held that a "claimant's residual functional capacity is a medical question."  *Lauer v. Apfel,* 245 F.3d 700, 704 (8th Cir. 2001).  Therefore, an ALJ's determination concerning a claimant's RFC must be supported by medical evidence that addresses the claimant's ability to function in the workplace."

*Lewis v. Barnhart,* 353 F.3d 642, 646 (8th Cir. 2003); *see also Jones*, 619 F.3d at 971 (RFC finding must be supported by some medical evidence).

Plaintiff insists the ALJ's RFC assessment lacks substantial support because it does not incorporate limitations resulting from her back and hip pain and obesity. After reviewing the evidence, we disagree. At the onset, we note that the ALJ properly considered the Plaintiff's obesity in conjunction with her pain, noting that her obesity exacerbated her pain. *See* Social Sec. Rul. 02-1p. He ultimately concluded, however, that even in combination, her impairments did not render her disabled.

It appears the Plaintiff first reported back pain in October 2007, claiming a work-related injury the previous year. Treatment included injections, physical therapy, muscle relaxers, and pain medication. Later that month, she reported improvement in her pain with continued occasional muscle spasms.

Although the Plaintiff did not seek out further treatment until November 2009, the Commissioner ordered a consultative examination with Nurse Practitioner Pham-Russell in September. Tr. 687-690. Lumbar x-rays showed degenerative disk disease at the lumbosacral junction with degenerative facet changes and some sclerosis along her right sacroiliac joint possibly related to sacroiliitis. A physical exam showed some right paralumbar tenderness in the lumbar spine with a normal range of motion in all areas and a negative straight leg raise test. Nurse Pham-Russell concluded Plaintiff would have moderate lifting limitations and restrictions associated with excessive bending and stooping.

In November 2009, Plaintiff complained of left hip pain and joint stiffness. Dr. Laura Adams diagnosed her with osteoarthritis of the hip and prescribed Meloxicam. Tr. 382-384.

In January 2010, Dr. Rodney McDonald treated her for a six-month history of left hip pain that had worsened in the previous weeks. Tr. 375-379. She indicated that Meloxicam had only been somewhat helpful. An examination revealed her alleged hip pain actually originated in her lower back. However, she had a normal neurological examination, and Dr. McDonald prescribed Naproxen. *See Hepp v. Astrue*, 511 F. 3d 798, 807 (8th Cir. 2008) (moderate, over-the-counter medication for pain does not support allegations of disabling pain).

In March 2010, Plaintiff reported increasing hip pain. Tr. 252-253. Rheumatologist, Dr. James Deneke, noted he had not seen Plaintiff since 2004. A physical exam revealed some tenderness in the greater trochanter, more so on the left than right, and weak ankle jerks. Otherwise, she had normal strength in her lower extremities and a normal range of motion in all of her joints. X-rays showed minimal degenerative changes. Accordingly, Dr. Deneke recommended continued use of Aleve and heat, as well as physical therapy.

By May 2010, Plaintiff reported some improvement. Tr. 249-251. *See Patrick v. Barnhart*, 323 F.3d 592, 596 (8th Cir. 2003) (holding if an impairment can be controlled by treatment or medication, it cannot be considered disabling). At this time, Dr. Deneke increased her Naproxen dosage.

Due to edema, in November 2010, Plaintiff underwent a venous doppler of her legs. Tr. 309. This revealed a baker cyst behind her right knee. Plaintiff returned to Dr. Deneke's office in December 2010, at which time he diagnosed her with hip pain, disease of the lumbar spine, and a baker's cyst on the right knee. Tr. 262-264. Again, he recommended exercise and stressed the importance of weight reduction. Tr. 262-264.

Her next follow-up occurred four months later, in April 2011. Tr. 393-395. Plaintiff reported continued improvement with Naproxen, and Dr. Deneke discussed proper posturing and

again stressed the importance of regular conditioning and weight loss. *See Edwards v. Barnhart*, 314 F.3d at 967 (holding that ALJ may discount disability claimant's subjective complaints of pain based on the claimant's failure to pursue regular medical treatment).

Later that month, Plaintiff complained of a recent exacerbation of her back pain after bending over in her garden. Tr. 456-460. A physical examination revealed no neurological deficits. Dr. McDonald diagnosed Plaintiff with lumbago and prescribed Meloxicam and Flexeril.

Ten months later, in February 2012, Dr. McDonald noted the Plaintiff was "feeling fine" and had a normal gait and stance. Tr. 444-449. *See Forte v. Barnhart*, 377 F.3d 892, 895 (8th Cir. 2004) (holding that lack of objective medical evidence is a factor an ALJ may consider).

Five months later, in June 2012, Plaintiff presented at cardiologist, Dr. Stephen Manus' office with complaints of aching in her left lower extremity. Tr. 751, 753. He diagnosed her with ecchymosis of the left lower extremity and tenderness in the left calf. Dr. Manus ordered nerve conduction studies to evaluate the Plaintiff for possible neuropathy. However, there is no indication that the Plaintiff ever underwent the recommended tests. *See Wagner v. Astrue*, 499 F.3d 842, 851 (8th Cir. 2007) (a failure to follow a recommended course of treatment weighs against credibility). Moreover, an examination by Dr. Manus in August 2012 was essentially normal. Tr. 759-760. *See Forte*, 377 F.3d at 895 (holding that lack of objective medical evidence is a factor an ALJ may consider). Treatment notes from Dr. McDonald in September 2012 also documented a normal examination, stance, and gait. Tr. 811-816, 817-822. *Id.*

In December 2012, Plaintiff reported feeling fine, although she complained of a history of left buttock pain radiating down her leg and into her knee. Tr. 805-809. Dr. McDonald noted that her examination remained normal, but prescribed a trial of Nortriptyline and physical therapy. *Id.* Physical therapy progress notes reveal approximately 15 appointments between December 2012

7

and February 2013, and document the responsiveness of Plaintiff's pain to treatment. Tr. 762-794. *See Patrick*, 323 F.3d at 596 (holding if an impairment can be controlled by treatment or medication, it cannot be considered disabling). Furthermore, in January 2013, Dr. McDonald noted that the combination of therapy and Nortriptyline was helpful. Tr. 800-804. *Id.* Accordingly, he again increased her Nortriptyline dosage.

In a final treatment note dated February 2013, Dr. McDonald indicated that the Plaintiff was feeling fine. Tr. 795-799. Her back pain had improved somewhat with Nortriptyline, although she still had some pain. *Gowell v. Apfel*, 242 F.3d 793, 796 (8th Cir. 2001) (holding that the real issue is not whether the plaintiff is experiencing pain, but how severe and whether it prevents him from performing any kind of work). He documented a normal exam, but recommended an MRI for further evaluation. *See Forte*, 377 F.3d at 895. However, Plaintiff declined the test because she was not ready to consider a neurosurgical referral. *See Wagner*, 499 F.3d at 851 (failure to follow recommended course of treatment weighs against credibility).

In reviewing the Plaintiff's treatment history, we note the inconsistency in her treatment for alleged back/hip/knee pain. While the record does suggest flare-ups of pain, we find no evidence to indicate that her condition warranted a regular prescription for narcotic pain medications, hospitalization, or surgery. In fact, the treatment prescribed during the relevant time period consisted of conservative measures to include medication and physical therapy/conditioning. *See Smith v. Shalala*, 987 F.2d 1371, 1374 (8th Cir. 1993) (holding that treating physician's conservative treatment was inconsistent with plaintiff's allegations of disabling pain). And, it appears that her condition was at least somewhat responsive to this treatment, as her pain improved. See *Patrick*, 323 F.3d at 596 (holding if an impairment can be controlled by treatment or medication, it cannot be considered disabling). Further, physical

examinations as well as x-rays showed only mild to moderate degenerative changes with no significant long-term range of motion, neurological, or sensation deficits. *See Forte*, 377 F.3d at 895 (holding that lack of objective medical evidence is a factor an ALJ may consider).

We also find that the Plaintiff's daily activities call into question her allegations of disability. The Plaintiff reported the ability to care for personal hygiene with limitations concerning getting into and out of the bath tub and difficulty putting on her socks and shoes; prepare simple meals daily; perform some housework; drive a car; ride in a car; shop in stores for food two or three times per month; pay bills; use a checkbook/money orders; watch television, solve crossword puzzles; and, talk on the phone regularly. Tr. 176-183, 194-201. *See Pena v. Chater*, 76 F.3d 906, 908 (8th Cir. 1996) (ability to care for one child, occasionally drive, and sometimes go to the store); *Nguyen v. Chater*, 75 F.3d 429, 430-31 (8th Cir. 1996) (ability to visit neighbors, cook, do laundry, and attend church); *Novotny v. Chater*, 72 F.3d at 671 (ability to carry out garbage, carry grocery bags, and drive); *Johnston v. Shalala*, 42 F.3d 448, 451 (8th Cir. 1994) (claimant's ability to read, watch television, and drive indicated his pain did not interfere with his ability to concentrate); *Woolf v. Shalala*, 3 F.3d 1210, 1213-1214 (8th Cir. 1993) (ability to live alone, drive, grocery shop, and perform housework with some help from a neighbor).

As for medication side effects, although the Plaintiff testified that the Hydrocodone caused drowsiness, she reported no medication side effects to her health care practitioners. As such, the overall record does not support these alleged side effects, and the ALJ did not err in failing to include them in his RFC determination. *See Zeiler v. Barnhart*, 384 F.3d 932, 936 (8th Cir. 2004) (alleged side effects were properly discounted when plaintiff did not complain to doctors that her medication made concentration difficult).

In addition to the consultative exam conducted by Nurse Pham-Russell, we note that the record contains two other RFC assessments. In February 2011, Dr. Jerry Thomas completed an RFC assessment for the Commissioner. Tr. 461-462. Reviewing only her medical records, Dr. Thomas concluded that Plaintiff could perform a full range of light work. The Plaintiff objects to the ALJ reliance on this RFC, arguing that it was outdated and did not take all of her impairments into consideration. However, as the evidence bears out above, there is no indication that her condition worsened between February 2010 and the ALJ's decision. If anything, Plaintiff's condition improved.

In April 2010, in conjunction with her prior application for benefits, Dr. Manus completed an RFC assessment based on her prior cardiac symptomology. Tr. 582-583. He concluded the Plaintiff could lift no more than 10 pounds, stand and walk continuously for 2 hours for a total of 4 hours, and sit continuously for 1.5 hours for a total of 4 hours; would require work breaks or restroom breaks, need to elevate her lower extremities, and lay supine for 1 hour per day; could climb, balance, squat, kneel, crouch, and bend for less than 2 hours out of an 8-hour workday; must avoid all exposure to extreme cold and heat; and, must avoid concentrated exposure to wetness, humidity, gasses, and poor ventilation. However, he also indicated the Plaintiff could work an 8-hour workday.

In June 2012, in response to the Plaintiff's request for an updated assessment, Dr. Manus stated he would need to reevaluate the Plaintiff before he could assign any limitations. Tr. 752. Although she did return to Dr. Manus' office for follow-up appointments, he was neither asked for nor did he offer an assessment of her work-related abilities. And, recent records from him reveal the Plaintiff no longer experienced angina, congestive failure, dysrhythmia, or vascular insufficiency. Tr. 303-304, 389-390, 391-392, 408, 752, 759-760. In fact, her EKG's and physical

exams revealed no significant abnormalities, and an echocardiogram and nuclear stress test revealed normal cardiac function with a normal ejection fraction rate. Records from Drs. Deneke and McDonald also detract from Dr. Manus' assessment, suggesting that her impairments both improved and were responsive to medication. Accordingly, we find Dr. Manus' assessment was not entitled to significant weight.

After considering the medical evidence, Plaintiff's daily activities, and the assessments of Nurse Pham-Russell, Dr. Manus, and Dr. Thomas, the ALJ concluded the Plaintiff could perform a full range of light work. We agree. Contrary to the Plaintiff's assertion otherwise, we find that this assessment incorporates Nurse Pham-Russell's findings of moderate lifting limitations. As for the limitations regarding excessive bending and stooping, a full range of light work includes the ability to only "occasionally" bend or stoop. *See* Social Sec. Rul. 83-14. Thus, for the reasons enumerated above, we find that substantial evidence supports the ALJ's RFC determination.

### B. Develop the Record:

Next, the Plaintiff alleges the ALJ erred by failing to order the orthopedic and mental consultative examinations requested by her counsel. The ALJ owes a duty to a claimant to develop the record fully and fairly to ensure her decision is an informed decision based on sufficient facts. *See Stormo v. Barnhart*, 377 F.3d 801, 806 (8th Cir. 2004). In determining whether an ALJ has fully and fairly developed the record, the proper inquiry is whether the record contained sufficient evidence for the ALJ to make an informed decision. *See Haley v. Massanari*, 258 F.3d 742, 748 (8th Cir. 2001). However, the ALJ is only required to develop a reasonably complete record. *See Clark v. Shalala*, 28 F. 3d 828, 830 (8th Cir. 1994). Moreover, the ALJ is only required to order medical examinations and tests if the medical records presented to him do not give sufficient medical evidence to determine whether the claimant is disabled. *Barrett v. Shalala*, 38 F.3d 1019,

11

1023 (8th Cir. 1994); 20 C.F.R. §§ 404.1519a(b) and 416.919a(b) (2006). Contrary to Plaintiff's allegation, the ALJ properly developed the record in this case.

The record consists of numerous medical records, dating back to 1995. As previously mentioned, the record did contain an RFC assessment from a treating source[2], an examining consultant, and a non-examining consultant. Plaintiff insists that the ALJ's denial of her request for an orthopedic exam and his failure to request a more recent RFC assessment from her treating physicians requires reversal. Here, the record contains sufficient evidence for the ALJ to make an informed decision. As discussed in connection with the ALJ's RFC assessment, the evidence reveals the Plaintiff's treatment was conservative in nature, the objective medical evidence showed mild to moderate limitations that were properly included in the ALJ's RFC determination, the Plaintiff failed to seek out consistent treatment, and her pain was responsive to treatment via medication and physical therapy.

Further, we can find no evidence to indicate that the Plaintiff was suffering from a disabling mental impairment. In fact, Plaintiff frequently denied depression and anxiety related symptoms. Tr. 795-799, 800-804, 805-809. As such, we find no error in the ALJ's failure to order a consultative exam.

Likewise, we can find no evidence to indicate that an RFC assessment from Plaintiff's treating physicians would have changed the outcome of this case. *See Page v. Astrue*, 484 F.3d 1040, 1043 (8th Cir. 2007) (the medical evidence, State agency physician opinions, and claimant's own testimony were sufficient to assess residual functional capacity); *Stormo v. Barnhart*, 377 F.3d 801, 807-08 (8th Cir. 2004) (medical evidence, State agency physicians' assessments, and

---

[2] We do, however, note that this assessment was completed prior to the relevant time period.

12

claimant's reported activities of daily living supported residual functional capacity assessment). The evidence, when taken as a whole, makes clear that the Plaintiff is capable of performing a full range of light work. Accordingly, Plaintiff's argument is without merit.

    C. **Step Four Analysis:**

Lastly, the Plaintiff argues the ALJ wrongfully determined she could perform her PRW as a parts auditor/inspector on the line. Specifically, she asserts the ALJ improperly relied on vocational expert testimony that was not in the record, depriving her of the right of cross-examination. Moreover, she contends that the ALJ's refusal to call a vocational expert, as requested, constitutes error. However, vocational expert testimony is not required at step four where the Plaintiff retains the burden of proving she cannot perform her PRW. *Lewis v. Barnhart*, 353 F.3d 642, 648 (8th Cir. 2003).

We do note that the ALJ did consider the testimony of a vocational expert testifying at the hearing on her prior application in June 2010. The VE classified her PRW as light work, and the ALJ merely took note of that evaluation. The ALJ did not stop there, however. He properly compared the demands of her PRW with the Plaintiff's RFC. *See Ingram v. Chater*, 107 F.3d 598, 604 (8th Cir. 1997) ("The ALJ must make explicit findings regarding the actual physical and mental demands of the claimant's past work. Then, the ALJ should compare the claimant's residual functional capacity with the actual demands of the past work..."). Accordingly, we find the ALJ properly determined the Plaintiff could perform her PRW. And, because the ALJ was not obligated to call a vocation expert to testify, his failure to do so resulted in no error and no denial of the Plaintiff's right to cross examine the witness.

**V.     Conclusion:**

Having carefully reviewed the record, the undersigned finds substantial evidence supporting the ALJ's decision denying the Plaintiff benefits, and affirms the decision. The undersigned further directs that the Plaintiff's Complaint be dismissed with prejudice.

DATED this 6th day of May, 2015.

/s/ *Mark E. Ford*
HONORABLE MARK E. FORD
UNITED STATES MAGISTRATE JUDGE